## CALLAHAN v
## CHAMPION PAPER & FIBRE CO et

Ohio Appeals, 1st Dist, Butler Co

Decided Feb 14, 1938

Pater & Pater, Hamilton, and Walter S. Harlan, Hamilton, for appellee.

James B. Benedict, Cincinnati, and Francis T. Bartlett, Cincinnati, for appellants.

## OPINION
By MATTHEWS. J.

This is an appeal from a judgment of the Common Pleas Court of Butler county, Ohio, in favor of the plaintiff, the widow of Bradley Callahan, against the defendants, who are self-insurers under the provisions of the Workmen's Compensation Act of this state.

Bradley Callahan was an employee of the defendant on June 26th, 1935. He reported for work at 7:00, A. M., on that date, and, with other employees proceeded with his usual work, which was unloading from freight cars rolls or cylinders of wood pulp weighing from 125 to 175 pounds each, loading them upon wagons or trucks, and then pushing or pulling these wagons or trucks to an elevator by which they were lifted to an upper story, where the rolls were unloaded and stacked in bins. The rolls were handled by two employees, grasping their hands underneath them and carrying the rolls between them. These rolls were thirty inches long and twenty inches in diameter, and were stacked upright in the bins row upon row. In stack-

ing the second row, the employees walked over the first row, the tops of which formed a fairly even surface with, however, small openings because of the circular form of the ends of the rolls. The material of the rolls was soft, resembling blotter paper.

Bradley Callahan was engaged in this work in the usual manner for about two hours on this day, and while so engaged no one noticed any peculiarity in his conduct or any incident of an unusual nature in connection with his work, but, after he had worked about two hours an employee noticed him holding his hand to his side as he passed and he said his side hurt. This employee suggested that he go to the "First-Aid" hospital maintained by the employer and on Callahan declining to do this, noticing that he was red in the face and warm suggested, that he get a drink and cool off. Callahan followed this suggestion and went into the mill where the drinking fountain was located. Later, this employee saw Callahan come out of the mill and lie down upon the platform of one of the wagons used to transport the rolls from the freight cars to the bins. Another employee came down on the elevator with Callahan, apparently after he had ceased work, and saw him get a drink right after he got off the elevator. Other employees discovered him lying on the wagon platform in great pain and unable to walk. They put him in an automobile and took him to the employer's emergency hospital on the premises, where, after examination by the physician he was advised to allow them to take him to some hospital where he could be given medical attention. Callahan said he wanted to be taken home, but, after the physician had explained to him the seriousness of his condition he consented to be taken to Mercy Hospital. As a result of the examination there, the physician decided that an abdominal operation was necessary. This operation was performed between twelve o'clock noon and one o'clock, P. M., on the same day. It was found that he had a perforated or torn intestine near the umbilicum about one-half to one inch long, through which the contents of the intestine had flowed into the abdominal cavity. The perforation was closed, the cavity washed out, and the surgical incision closed. After lingering for four days, Callahan died of peritonitis, due to this tear. The physicians agreed that the tear was fresh and also that there was no evidence of external violence, or of any disease that would cause the wall of the intestine to

tear. There was evidence that the intestine could have been ruptured by external violence without any evidence thereof upon any other part of the body.

As to the causes of intestinal rupture, a physician called by the claimant said: "There are a large number of things that might cause a tear, such as being run over by a wagon wheel, or by increased pressure inside the intestinal tract or lifting or straining, or by being struck a blow on the abdomen, and catching a link in the intestine in a groove, closing off both ends and puncturing the intestine," and also: "You may state whether or not the intestine or gut may be rent or torn from internal force as well as external force?" To which the answer was: "It may, yes."

There was no further evidence as to the cause of intestinal tears.

The physicians who testified agreed that such a tear of the intestine would be accompanied by an immediate shock to the entire physical structure, so severe that, within a short interval, variously estimated from two to ten minutes, there would result complete collapse and total incapacity.

At no time while Callahan was at the defendant's place of business did he make any statement indicating the cause of the pain which he was suffering. He complained of the pain, but assigned no reason for it.

The plaintiff asked this question of the decedent's son: "What did your father say as to his receiving an injury that morning?" The court sustained the defendant's objection to this question, which we think was correct under the ruling in Weaver v Industrial Commission, 125 Oh St 465. The proffered answer was: "My mother and myself went to the hospital, and she asked him what was the matter with him, and he said that he liked to killed himself in the mill."

It is in evidence that before Callahan went to work that morning "he had been feeling bad, and that his stomach had been hurting in the morning before he went to work."

From the evidence, the jury undoubtedly would have been justified in concluding that this perforation of the intestine took place while Callahan was on the premises of his employer, during the hours of his employment. The evidence that the perforation was fresh, and that such a perforation is followed almost immediately by complete collapse would certainly make it more probable that the actual tear did not exist when Callahan started to work

that morning, and, as the evidence tended to prove that Callahan was on the premises and engaged about his duties, that the tear occurred while he was in the course of his employment. That it answers the description of an injury as distinguished from a disease within the meaning of the Workmen's Compensation Act is clear. This leaves but one question and that is: Was there any substantial evidence that this injury arose out of his employment? To answer this question in the affirmative it must appear that: "The injury, casualty, or disease have some causal connection with the employment, either through its activities, its conditions, or its environments. it being established the provisions of the statute do not cover an injury which has its cause entirely outside of and disconnected from the business in which the injured workman is employed," (42 O. Jur. 627) for "no compensation can be allowed under the statute, for disability or death from a heart attack, hemmorrhage, **rupture** **or** similar affliction, occurring while the workman was engaged in the performance of his duties, not due to strenuous muscular effort, or without any happening of an accidental nature or character, or the existence of any unusual condition or circumstance, or a causative factor." **42 O. Jur. 654.** And the burden of making it so appear is upon the plaintiff. Id. 731. **Highway Oil Co v Bricker, Atty. Gen'l, 132 Oh St 175, 7 O. O., 254.**

Now does this evidence show any causal connection between the injury and the employment, or in other words, is there any evidence that an injury arising out of his employment caused the employee's death?

One of the causes of intestinal rupture assigned by the physicians is increased pressure within the intestinal wall, and this cause is distinguished from a rupture caused by external force. What would cause this increased pressure within the intestinal wall is not disclosed, other than that it is not caused by the application of external force. Certainly, a rupture caused by internal pressure would have no causal connection with this employment.

Other possible causes assigned by the physician all relate to the application of external force and are of such a character that they might have a causal relation to the employment, and as the evidence excludes any diseased condition of the intestine, and shows that the normal course of the work would not cause the intestine

of a healthy person to tear, it might be inferred from the nature of the rupture that it resulted from some unusual external occurrence in the absence of any other possible cause, but where and under what circumstances the unexpected and unusual external force was applied does not appear.

There is no evidence of any unusual happening in relation to the work that Callahan did that morning. To say from the evidence in this case what caused the rupture would be a pure guess. There is nothing in the evidence to indicate that one cause was any more probable than another.

Furthermore, the absence of any evidence of an unusual happening in connection with the work precludes the inference that if the rupture was caused by external force, that such force had any causal relation with the employment.

Another difficulty, however, is that there is this possibility, namely, that the rupture may have been caused by pressure from within the intestinal wall.

For these reasons, we are of the opinion that there is no evidence that the employee's death resulted from an injury arising out of the employment and, that, therefore, the trial court erred in overruling the defendant's motions for an instructed verdict.

The judgment is reversed and final judgment rendered for the defendants.

ROSS, PJ, concurs; HAMILTON, J, dissents.